IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| MARZETT PARKER, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 11-5016-CV-SW-RED-P |
| ) | Crim. No. 06-5018-CR-SW-RED |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER

Before the Court is Marzett Parker's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

## INTRODUCTION

Movant Marzett Parker ("Parker") was found guilty of one count of a conspiracy to distribute one or more kilograms of phencyclidine ("PCP"), one count of possession with the intent to distribute one or more kilograms of PCP and one count of possession with the intent to distribute five or more kilograms of cocaine. Parker was sentenced to a term of imprisonment of 324 months on each count to run concurrently. After the Court entered its judgment, Parker appealed to the Eighth Circuit, challenging the Court's denial of his motion to suppress evidence, denial of his motion to exclude a portion of the testimony of Cindon Young ("Young") who identified Parker as 'Herm' and Herm as the driver for the conspiracy to distribute PCP, and denial of his motion for judgment of acquittal. The Eighth Circuit affirmed the Court's decisions with respect to these issues. Parker subsequently filed his Motion under 28 U.S.C. § 2255 challenging his sentence in which he asserts five grounds. Although Parker filed his § 2255 Motion *pro se*, Parker retained counsel who proceeded to file Suggestions in Support of Movant's Motion under 28 U.S.C. § 2255

(Doc. 10) which elaborates on the five grounds raised in the § 2255 Motion. The United States responded to the § 2255 Motion and the Suggestions in Support and requests that the Court deny the Motion without holding an evidentiary hearing.

## DISCUSSION

*Parker cannot establish Strickland prejudice supporting his claim that his appellate counsel should have appealed whether a mistrial should have been granted*

Parker's first ground alleges that he was denied his Sixth Amendment right to the effective assistance of counsel on appeal because his appellate counsel failed to appeal the Court's denial of his motion requesting a mistrial. The facts surrounding the request for a mistrial concern Young's testimony. Specifically, Young was asked what Herm, an individual who had previously been identified by Young to be Parker, "did for a living" to which Young replied "[s]ell cocaine." (Doc. 205 p. 369 ln. 1-5). Immediately after Young testified that Parker had sold cocaine for a living, Parker's counsel moved for a mistrial, which the Court denied. The Court instructed the jury that Young's answer was "not responsive at all" and that it should be stricken and disregarded by the jury. Counsel for the United States was then allowed to ask, in leading fashion, if Young was aware that Herm had a truck driving business and that Herm had at least five trucks for use. In Parker's Suggestions in Support, Parker places emphasis on other portions of Young's testimony to support his argument that a mistrial should have been declared. Notably, before the testimony that Parker sold cocaine, Young also stated that he objected to the conspiracy's plan to transport the 40 gallons of PCP at issue on a car hauler connected to Parker's tractor trailer, but other members of the conspiracy told him not to worry because Parker had been doing it "for years and years." (Doc. 204 p. 360 ln. 19-23). Young's testimony carried over into the third day of trial, where counsel for the United States followed up with a quick rendition of this line of testimony, and Young reiterated that

2

Parker had been transporting drugs in this manner "for some years." (Doc. 205 p. 368 ln. 1-4). Young was reassured not to worry about having Herm transfer the drugs based on this representation by Kim Walker and Alphonso Foster, two individuals involved in the conspiracy for which Parker was convicted.

Parker argues that had it been appealed, the Eighth Circuit would have found that the admission of this portion of Young's testimony warranted a mistrial. Parker does not cite to any specific cases on point in support of the argument that Young's testimony warranted a mistrial. Parker argues that after the jury heard the testimony that he sold cocaine and Young's testimony that Parker had done this "for some years," the extent of the prejudice of Young's testimony is demonstrated by the fact that the jury acquitted Odell M. Edwards ("Edwards"), a co-defendant. However, the jury did not acquit Edwards on the conspiracy count because the Court sustained Edward's motion of acquittal as to the conspiracy charge. (Doc. 206 p. 668 ln. 16-21). Parker states that by the time Young testified, "strong grounds existed for believing the government had not established a case against [him]." The evidence that Parker relies on is the fact that drugs were found in the vehicles on the car hauler and not in his tractor trailer, he had a legitimate trucking business and he had an explanation as to why his trip logbook was out of date, namely that he was having family problems and could not get underway sooner. Thus, according to Parker, when Young's testimony was given, he was denied his right of due process and a fair trial, and but for his appellate counsel's failure to raise this issue, a reasonable probability exists that the Eighth Circuit would have ruled in his favor.

The Government responds by stating that when Parker's trial counsel asked for a mistrial after Young stated that Parker sold cocaine for a living, the Court opted to strike the testimony and

3

to instruct the jury to disregard that testimony. The Government further states that striking prejudicial testimony and instructing the jury to disregard such testimony normally cures the error and if the evidence of the defendant's guilt is substantial, the admission of the testimony may be found to be harmless. *United States v. Brandon*, 521 F.3d 1019, 1026 (8th Cir. 2008). The Government further notes that the Eighth Circuit has already found that "the evidence overwhelmingly supports the conspiracy conviction both through direct evidence of the conspiracy, and through Parker's own actions" when it issued its opinion denying Parker's direct appeal. *United States v. Parker*, 587 F.3d 871, 880 (8th Cir. 2009).

An ineffective assistance of counsel claim requires a petitioner prove his or her counsel's "performance was deficient and that the deficiency prejudiced his defense." *Deltoro-Aguilera v. United States*, 625 F.3d 434, 437 (8th Cir. 2010). Deficient performance is defined as performance that "falls below the 'range of competence demanded of attorneys in criminal cases.' " *Theus v. United States*, 611 F.3d 441, 446 (8th Cir. 2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Prejudice requires the petitioner "demonstrate that there is a reasonable probability that the outcome would have been different but for counsel's deficient performance." *Theus*, 611 F.3d at 447. In order for Parker to successfully challenge the ineffectiveness of his appellate counsel, Parker must show that "no reasonable professional attorney could have omitted" from appellate review the particular issue in question and that "there is a reasonable probability the result on appeal would have been different if the attorney had raised" the issue in question on appeal. *Rodden v. Delo*, 143 F.3d 441, 445 (8th Cir. 1998). Furthermore, the Eighth Circuit reviews a district court's denial of a mistrial under an abuse of discretion standard. *United States v. Garrett*, 648 F.3d 618, 624 (8th Cir. 2011). When the issue is "whether improper testimony prejudicially affected the

4

verdict, [the Court of Appeals] considers the context of the error and the strength of the evidence of the defendant's guilt." *Id*.

The Court finds that the introduction of Young's testimony did not warrant a mistrial. The only argument Parker makes with respect to this issue is that the evidence linking Parker to the conspiracy was weak which greatly impacted the prejudice of Young's statements. However, the Eighth Circuit has already determined that the evidence linking Parker to the conspiracy "overwhelmingly" supported Parker's conspiracy conviction. *Parker*, 587 F.3d at 880. This evidence included the fact that Young identified Parker as Herm and testified that Herm would be the driver to transport the PCP, PCP and documents related to the conspiracy were found in vehicles that Parker was transporting and Parker had five cell phones in his possession, one of which was registered to a Herman Michelle and two of which were used to contact Walker. Additionally, Parker's reliance on Edwards acquittal is misplaced, due to the fact that the Court granted Edward's acquittal in part because Foster, Walker and Young did not "have a clue who Mr. Edwards was," which is obviously not the case with Parker who was identified as Herm. (Doc. 206 p. 668 ln 16-21). Thus, even if it is assumed that Young's statements about Parker selling cocaine and that Parker had "done this before" are prejudicial, this does not undermine the other evidence in the record linking Parker to the conspiracy which constitutes most[1] of the evidence Eighth Circuit has

---

[2] The Eighth Circuit did note that Young testified that Parker was chosen after Young was reassured that Parker had "done this before" and he had been "doing this for some years." Parker attempts to lump this in with Young's statement about Parker selling cocaine. However, at trial, Parker's counsel only argued that this testimony was not proper because it was not in furtherance of this particular conspiracy, which was denied. Parker never objected to the statement being unfairly prejudicial or improper on other grounds and thus, his current argument with respect to this particular testimony of Young is likely waived. *United States v. West*, 612 F.3d 993, 996 (8th Cir. 2010) (noting that objections must be timely made in order to be preserved); *United States v. Yarrington*, 634 F.3d 440, 447 (8th Cir. 2011) (noting that the specific grounds of the objection must

5

already found to be sufficient. Given the evidence in the record and the fact that Parker is attempting to revisit arguments about the weight of the evidence linking him to the conspiracy which were already addressed, even if the prejudicial impact of Young's testimony was not cured by striking the statement and instructing the jury to disregard it, "[a]ny residual prejudice that may have survived the curative actions was harmless" when considering the other evidence in the record linking Parker to the conspiracy. *Brandon*, 521 F.3d at 1027. Finally, given the extent of the evidence linking Parker to the conspiracy, Young's testimony at trial did not warrant granting a mistrial.

Parker cannot prove that a mistrial should have been granted. Therefore, Parker cannot establish *Strickland* prejudice for his ineffective assistance of counsel claim because there is no reasonable probability that the result on direct appeal would have been different. Failure to prove *Strickland* prejudice also supports a denial of Parker's claim without holding an evidentiary hearing. *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105-06 (8th Cir. 2011). Thus, Parker's first claim is denied.

*Parker cannot establish Strickland prejudice on his ineffective assistance of counsel claim that his trial counsel opened the door to additional harmful testimony by Young*

For his second claim, Parker again focuses on Young's testimony. Before the trial, the Court ruled that counsel for the Government had to approach the bench before attempting to admit

---

be raised in order to preserve the objection). A forfeited instruction may only be raised if the defendant can show that the district court committed plain error in not taking corrective action. *United States v. Green*, 560 F.3d 853, 859 (8th Cir. 2009). Even if Young's additional statements are considered to be prejudicial, at most the addition of these statements was harmless error given the nature of the other evidence in the record. *See United States v. Williams*, 512 F.3d 1040, 1044 (8th Cir. 2008) (applying a harmless error analysis to a Rule 403 challenge where other evidence in the record was overwhelming).

6

evidence of Parker's prior criminal conviction for possession of a controlled substance. The Government initially believed that Young's testimony about Parker having "done this before" and having been "doing this for some years" was a representation that Parker had transported drugs for Foster and Walker on prior occasions. *See* (Doc. 204 p. 361 ln 21-25; p. 361 ln. 1-4). However, at trial, it became apparent that when Young would testify about being apprehensive about using Parker to transfer PCP and Walker and Foster telling Young that Parker had done it before, they were referring to the fact that he had transferred drugs on his own using his tractor trailer and not as a part of their conspiracy. As previously noted, the only objection raised initially by Parker's trial counsel was that Young's testimony on this subject was not in furtherance of the conspiracy. The Court questioned Young outside the presence of the jury to inquire what he knew about Parker selling cocaine because evidence of Parker selling cocaine was previously stricken from the record based on Young volunteering this information. Young responded that Parker sold cocaine, and when the Court asked if that is what Parker hauled in his tractor trailer before, Young stated yes. The Court then instructed Young not to "volunteer the cocaine part of ... the trip" and that the attorneys were not likely "going to touch on that particular part anyway." (Doc. 205 p. 384 ln. 20-25). However, during cross-examination by Parker's counsel, the Court determined that his counsel has opened up questioning about Parker transporting cocaine, because counsel had "pushed [Young] to say what he said before and he's doing his darndest to not say it." (Doc. 205 p. 417 ln. 21-24). It appears that Parker's counsel may have been confused about Young's testimony and still believed that Young was stating that Foster and Walker had used Parker to transport drugs before and was trying to get Young to testify that Parker was never used by Foster and Walker before. Young tried to clarify without mentioning drugs or cocaine, but ultimately the Court concluded that the line of

7

questioning by Parker's trial counsel opened the door to allow the United States to clarify through Young's testimony, that Foster and Walker told Young that they could use Parker to transport the PCP because he had been "taking cocaine for years on the car trailer [and] [h]e never had no problems." (Doc. 205 p. 427 ln. 13-16).

Parker argues that Young's testimony on redirect examination was extremely prejudicial and a reasonable probability exists that but for this additional testimony, the jury would have acquitted Parker in light of the fact that the jury acquitted Edwards and because Young's testimony is the evidence that began to tie Parker to the conspiracy. Parker does not cite any specific cases in support. The Government responds and limits its argument to the fact that Parker cannot show *Strickland* prejudice due to the overwhelming evidence of guilt apart from Young's testimony about Parker transporting cocaine.

The Court also finds Parker's second argument to be without merit because whether or not Young's additional testimony is prejudicial under a Rule 403 analysis, the Eighth Circuit has already found the evidence in the record linking Parker to the conspiracy to "overwhelmingly support the conspiracy conviction." *Parker*, 587 F.3d at 880. Parker's argument continues to focus on the weight of the evidence and the fact that Edwards was acquitted, but as noted above, he mis-states the nature of the evidence against him and Edwards acquittal does not help Parker's cause. The Eighth Circuit has reasoned that "[w]hen there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice." *Christenson v. Ault*, 598 F.3d 990, 997 (8th Cir. 2010). *See also United States v. Carroll*, 207 F.3d 465, 472 (8th Cir. 2000) (finding that evidence of a prior conviction was harmless error in light of the overwhelming evidence against the defendant). Given the amount of evidence admitted against Parker, noted above, and the fact that Parker's reliance on

8

Edwards acquittal is of little consequence, the Court denies Parker's second ineffective assistance of counsel argument. Additionally, no evidentiary hearing is warranted because Parker cannot show *Strickland* prejudice. *Tinajero-Ortiz*, 635 F.3d at 1105-06.

*Parker cannot show Strickland prejudice with respect to his minor role reduction argument*

For Parker's third ground, he argues that he should have received a minor role reduction pursuant to United States Sentencing Guideline § 3B1.2 for being "less culpable than most other participants, but whose role could not be described as minimal." §3B1.2 cmt. n. 5. Parker states that the Government argued at the sentencing hearing that Young testified at trial to the cocaine being a side deal and not part of the conspiracy to transport PCP. Parker notes that Young never testified about the cocaine as being from side deal and the Government only proffered that Young would state that he, Foster and Walker did not know about the cocaine, but this evidence never came in at trial, as the Court did not allow the Government to let in this portion of Young's testimony. Finally, Parker notes that the other evidence at trial supports the fact that the cocaine may have been part of the conspiracy, as Armando Miles, another person that was a part of the conspiracy, admitted that Walker and Young have sent him cocaine in the same type of cans that were used to transport the PCP in this case. Parker cites to no cases on point demonstrating that such error by the Government constitutes *Strickland* prejudice.

The Government responds and argues that it did not mislead the Court. The Government notes that Parker's trial counsel did not object to the Government's characterization of Young's testimony and furthermore, the Government's counsel's characterization of Young's testimony is supported by a Drug Enforcement Administration report of a statement made by Young which was provided to Parker's counsel before trial. The Government also notes that Young actually testified

9

that he was told not to worry about using Parker to transport drugs because he had sold cocaine in the past and transported it using his tractor trailer. Finally, the Government notes that Parker's assertion that it was just as likely that he was transporting cocaine to Miles is not supported by the evidence, because Mines and Parker had never met. Thus, the Government argues that it was not error for the Court to rely on the proposition that Parker was solely responsible for the cocaine found in the vehicles he was transporting. The Government also notes that Parker does not discuss the evidence that supports the Court's rejection of a minor role reduction, namely that he was trusted to transport approximately $4 million worth of PCP and that transportation itself in this case supports a rejection of the minor role reduction. *See United States v. Alverez*, 235 F.3d 1086, 1090 (8th Cir. 2000).

Before further discussion of this issue, it is important to note that at the sentencing hearing only part of the Government's argument as to why Parker should not receive any reduction was due to the fact that the cocaine was a side deal. The Government also relied on the fact that Parker was trusted with a large load of PCP which was represented by the Government to be the largest in American history at the time, valued at approximately $4 million, he lied to the police and tried to mislead the police when he was initially stopped, and he had full knowledge of what he was doing when he was transporting the drugs. When the Court denied this particular reduction, it focused on the fact that Parker was involved and trusted with a large amount of drugs and also that there was "some" inference that "maybe" there were two different deals going on because of the two different drugs that were found at the stop. (Doc. 222 p. 8 ln. 17-25).

Based on the evidence in the record, there is not a reasonable probability that Parker would have been granted a minor role reduction or successfully appeal a denial of the reduction. As the

Government notes, serving as a drug courier alone may preclude the application of a minor role reduction. *See United States v. Adamson*, 608 F.3d 1049, 1053-54 (8th Cir. 2010) (affirming the district court's refusal to apply the minor role reduction because the defendant "transported approximately 225 kilograms of cocaine, 10 pounds of methamphetamine and $1,745,000" for the conspiracy and the defendant received around $120,000 in compensation). Parker was transporting 40 one gallon cans filled with PCP at a value of approximately $4 million and 12 kilograms of cocaine at a value of approximately $1.2 million. Parker drove his own tractor trailer to transport the drugs and was trusted to transport the PCP because he had transported drugs in the past. Furthermore, the evidence suggests that Parker was well aware of what he was transporting because he was identified by Young as Herm, Walker and Young indicated that Parker could be trusted and he was found with five cell phones in his possession, two of which were used to contact Walker. Parker was also going to receive $30,000 in compensation. Even if Parker was merely a courier, defendants in a similar situation have been denied this particular minor role reduction. *See Adamson*, 608 F.3d at 1054; *United States v. Alverez*, 235 F.3d 1086, 1090 (8th Cir. 2000) (finding the district court did not err in rejecting a minor role reduction argument where the district court found that the defendant was "aware of the substantial amount of narcotics" he was transporting for which he was held accountable).

Furthermore, although Parker tries to raise an inference that he was transporting the cocaine for another member in the conspiracy, an inference still exists that the cocaine found in Parker's possession was part of a side deal, as the heart of Miles testimony went to the fact that he discussed with Young and Walker about the transportation of PCP to Philadelphia, not cocaine. Miles further testified that he never met Parker and he only received cocaine from Young and Walker on one

11

occasion and "[t]hat was the first and only time." (Doc. 205 p. 515 ln. 13). Thus, although the Government may or may not have overstated the evidence in the record, merely being a courier in this particular case defeats the application of a minor role reduction and furthermore, an inference still exists based on witness testimony in the record that the cocaine was part of a side transaction. Therefore, Parker cannot show *Stickland* prejudice and his third argument is denied. As noted above, no evidentiary hearing is warranted because Parker cannot show *Strickland* prejudice. *Tinajero-Ortiz*, 635 F.3d at 1105-06.

*Parker cannot establish Strickland prejudice with respect to his claim that his appellate counsel committed error by not appealing the Court's decision that the police officers' search of the Ford Excursion on the tractor trailer did not exceed the scope of his consent to search*

Parker argues that the police officers exceeded the scope of the consent given to search for drugs in the vehicles because the officers opened up the metal cans within cardboard boxes and but for his appellate counsel's failure to appeal this issue, there is a reasonable probability that the Eighth Circuit would have found that the officers exceeded the scope of his consent. Parker's position is that although the police may have been allowed to search the Ford Excursion in this case, including the boxes inside of the vehicle, the scope was exceeded when the police opened up the metal cans within the boxes essentially by opening containers within containers. Parker argues that the metal containers were arguably single purpose containers, but unlike other single purpose containers such as a gun case, nothing about the metal cans gave rise to illegal activity. *See United States v. Banks*, 514 F.3d 769, 773-74 (8th Cir. 2008) (recognizing that certain single purpose containers have a reduced degree of privacy, such as particular gun cases, but that privacy in single purpose containers is not eliminated). However, Parker cites to no cases that have ever held that searching a container inside of another container exceeded the scope of consent for the search.

12

Although Parker cites *Banks* to support this concept, *Banks* never addressed the issue of whether the scope of the search was exceeded. In *Banks*, the police received consent to search an apartment for contraband and a gun case was found inside of a gym bag. *Id*. at 772. The issue before the Court was whether the police violated the defendant's fourth amendment rights by opening the gun case and seizing the firearm without a warrant. The Court never addressed whether the police could search the gun case pursuant to the consent for the search of contraband or whether searching a container within a container exceeded a consent search. Instead, the Court accepted that "[o]rdinarily, a warrant is necessary before police may open a closed container because by concealing the contents from plain view, the possessor creates a reasonable expectation of privacy ..." and this standard may also exist in 'single-purpose containers.' *Id* at 773-74. The Court did not elaborate on the single-purpose container issue because probable cause existed to seize the gun case. *Id*. at 774.

In response, the Government raises two arguments. First, the Government argues that under Eighth Circuit precedent the police officers were authorized under the consent given to open up the metal cans in their search for drugs. Second, the Government argues that before the officers opened up one of the metal cans, probable cause existed to allow the officers to search the cans because a strong chemical odor was coming from inside one of the vehicles, the metal cans contained false address labels and the liquid inside the cans did not move with the consistency of oil.

The Court finds Parker's argument to be without merit. Although Parker is trying to argue that there is a reasonable probability that the Eighth Circuit would have determined that the officers search of the contents of the metal can would have exceeded the scope of the consent given, the cases cited by Parker do not support the proposition he wishes to raise, namely that searching

13

containers within containers exceeds the scope of consent and that a 'fourth amendment exception' is needed to justify the search in this case. The most that can be said is that the cases do not specifically say that the police may open containers within containers, but this alone does not demonstrate a reasonable probability that the Eighth Circuit would decide this issue in Parker's favor. *See United States v. Acklen*, 97 F.3d 750, 751 (5th Cir. 1996) (affirming the district court's determination that *Strickland* prejudice cannot be established because there was not a reasonable probability that the court would have adopted a novel argument). As noted above, *Banks* never addressed the issue of whether police may search a container within a container pursuant to a consent to search. In fact, the established case law, that the police "may reasonably interpret a suspect's unqualified consent to search a vehicle for drugs to include consent to, inter alia: 'search containers within that car which might bear drugs ...' " *United States v. Ferrer-Montoya*, 483 F.3d 565, 568 (8th Cir. 2007) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)), supports that the police may search the metal containers in this particular case. Furthermore, in consensual search cases, "the permissible scope of the search is not a question of probable cause or reasonable suspicion but rather of the reasonable interpretation of the consent the suspect gave to the officer to conduct the search." *Id*. at 569 n.2. Given Parker's argument centering on the fact that "another Fourth Amendment exception was needed" to search the containers within the boxes (Doc. 10 p. 21-22), there is not a reasonable probability that had Parker's appellate counsel raised this issue, the Eighth Circuit would have determined that his motion to suppress should have been granted. As such, Parker's fourth argument is denied and no evidentiary hearing is warranted. *Tinajero-Ortiz*, 635 F.3d at 1105-06.

*Parker's claim that Young incorrectly identified him as Herm is not properly raised in a § 2255 Motion*

With respect to Parker's final argument, Parker conclusory argues that Young incorrectly testified that Parker was Herm. The Court does not find this argument to be persuasive. The credibility of witnesses are for the jury to make, and the jury is " 'free to believe the testimony of any witness in its entirety, or to reject that testimony as untrustworthy.' " *New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (quoting *United States v. Montano*, 506 F.3d 1128, 1133 (8th Cir. 2007)). Here the jury was free to determine whether Young's testimony was credible and this was a decision for the jury to make, not for the Court. To the extent that Parker's argument is a challenge to the sufficiency of the evidence, such an argument is improperly raised as a part of his § 2255 Motion. *See Bailey v. United States*, 29 F.3d 627 (8th Cir. 1994) (noting that a sufficiency of the evidence challenge may not be raised in a § 2255 motion); *United States v. Gaus*, 751 F.2d 1506, 1507 (8th Cir. 1985) (same); *Houser v. United States*, 508 F.2d 509, 516 (8th Cir. 1974) (same). Therefore, the Court rejects Parker's final argument.

Finally, no evidentiary hearing is necessary because this argument is improperly before the Court and Parker offers nothing but his own self-serving affidavit supporting the notion that Young's testimony incorrectly identified him to be Herm. *See Tinajero-Ortiz*, 635 F.2d at 1106 (noting that no evidentiary hearing is required where " '(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact' ") (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)).

*The Court will not issue a Certificate of Appealability*

The Court must also decide whether to issue a certificate of appealability which would allow Parker to appeal the denial of his § 2255 Motion. A certificate of appealability should only issue

15

if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires Parker to show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Parker has not demonstrated how he was prejudiced by his trial counsel and appellate counsel's alleged deficient performances in light of the amount of evidence linking him to the conspiracy to distribute PCP and this same evidence also supports the sentence he received. Furthermore, Parker does not cite any case law on point with respect to his argument that the scope to search was exceeded. Finally, Parker's argument that Young incorrectly identified him as Herm is wholly without merit and is improperly raised. For these reasons, the Court will not issue a certificate of appealability on any issue in this case.

## CONCLUSION

For the above reasons, the Court **DENIES** the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. If Parker chooses to appeal this Order, he is advised that the Court will not issue a certificate of appealability.

**IT IS SO ORDERED**.

DATED: December 20, 2011          */s/ Richard E. Dorr*
                                  RICHARD E. DORR, JUDGE
                                  UNITED STATES DISTRICT COURT